STATE of Alaska, Appellant,

v.

MARATHON OIL COMPANY, Appellee.

No. 2199.

Supreme Court of Alaska.

Nov. 18, 1974.

**294**

Norman C. Gorsuch, Atty. Gen., Juneau, Joseph D. Balfe, Dist. Atty., L. Eugene Williams, Asst. Dist. Atty., Anchorage, for appellant.

J. Bixby Willis, of Delaney, Wiles, Moore, Hayes & Reitman, Inc., Anchorage, for appellee.

## OPINION

Before RABINOWITZ, C. J., and CONNOR, ERWIN, BOOCHEVER and FITZGERALD, JJ.

FITZGERALD, Justice.

This case presents important questions concerning the extent of our review jurisdiction and the validity and interpretation of a regulation promulgated by the Department of Labor requiring employers to furnish a safe place of employment. We uphold the validity of the regulation, and a majority of the court affirms the conviction.

Following a trial in the district court, Marathon was found guilty of violating Section 300.20 of the Alaska Department of Labor General Safety Code.[1] The district judge imposed a $500 fine and Marathon promptly appealed the conviction to the superior court.[2] The superior court reversed the conviction on a finding that the evidence at trial failed to establish Marathon's guilt beyond reasonable doubt. The state now undertakes an appeal to this court from the order of the superior court directing entry of judgment of acquittal on remand to the district court.

Marathon has asked to have the state's appeal dismissed, claiming that the state is without right of appeal in criminal cases other than to test the sufficiency of the indictment or to appeal a sentence.[3] Since

1. Section 300.20 was taken from the Revised June, 1969, General Safety Code. These regulations are now codified in the Alaska Department of Labor, Division of Occupational Safety and Health, General Safety Code, 01.0102 (1973). The former section provided:
"Every employer shall furnish employment and maintain a place of employment which are safe for the employees therein.
No employer shall require any employee to go or be in any employment or place of employment which is not safe.
No employer shall fail or neglect to:
1. Provide or use safety devices and safeguards.
2. Adopt and use methods and processes reasonably adequate to render the employment and place of employment safe.
3. Do every thing reasonably necessary to protect the life and safety of employees.
4. Where any toxic materials are used or stored warning signs will be posted with a white background and red letters not less than 3 inches high.

No employer, owner, or lessee of any property shall construct or cause to be constructed any place of employment that is not safe."

2. AS 22.15.240(b) provides in part:
"The defendant may appeal a judgment of conviction given in the district court in a criminal action to the superior court."

3. AS 22.05.010 provides:
"(a) The supreme court has final appellate jurisdiction in all actions and. proceedings. The supreme court may issue injunctions, writs of review, mandamus, certiorari, prohibition, habeas corpus, and all other writs necessary or proper to the complete exercise of its jurisdiction. Each justice may issue a writ of habeas corpus, upon petition by or on behalf of any person held in actual custody and may make the writ returnable before the justice himself or before the supreme court, or before any judge of the superior court of the state. An appeal to the supreme court is a matter of right, ex-

the matter reaches directly to our final appellate jurisdiction, we first address the jurisdictional issue.

## I

## FINAL APPELLATE JURISDICTION

■ Marathon asserts that the superior court's order directing an acquittal is a final order. Hence, Marathon argues that the limitations in AS 22.05.010 preclude the state from appealing the order to this court. It is, however, conceptually incorrect to view the case in its present posture as an appeal by the state from a final order of the superior court. Rather, the appellate process began at the time the appeal was taken by Marathon from the judgment of the district court.

■ In this matter the superior court must be recognized as an intermediate appellate court since final appellate jurisdiction by reason of Article IV, Section 2, of the Alaska state constitution rests in this court:

"The supreme court shall be the highest court of the State, with final appellate jurisdiction."

Once the appellate process is properly invoked, final appellate jurisdiction is in the Supreme Court; for to hold otherwise would contravene the explicit constitutional provision.

This court expressed similar views in State v. Browder, 486 P.2d 925 (Alaska 1971). It was held there that the limitation in AS 22.05.010 could not preclude a petition for review [4] to this court filed by the state where the matter sought to be reviewed involved a non-final order or decision of the superior court:

"If AS 22.05.010 is construed to prohibit this court's review of any actions challenged by the state, then a conflict would arise between article IV, section 2 of the constitution and AS 22.05.010. Acceptance of this construction in the context of the case at bar would mean that the superior court, rather than this court, is the highest court of the state possessed of final appellate jurisdiction. This court would then be limited to reviewing only those cases where a conviction had been obtained and a defendant had appealed. We believe that a construction of AS 22.05.010 which carries over the limitation on the state's right to appeal in criminal matters to other forms of review would be contrary to the intent of the framers of our constitution when they determined that the supreme court was to be the highest court of the state, and was to be vested with final appellate jurisdiction. Unless the supreme court can fully implement its final appellate jurisdiction through use of its review jurisdiction, it will be extremely difficult, if not impossible, for this court to exercise proper control over the administration of criminal justice, and the development of rules of law in criminal trials." [5] [footnote omitted]

■■ Our decision in the case at bar is consistent with the underlying purposes of AS 22.05.010. That statute furnishes the essential implementation for constitutional protection against double jeopardy.[6] Therefore, the limitation proscribing state appeals in criminal cases applies to appeals

cept that the state shall have no right of appeal in criminal cases, except to test the sufficiency of the indictment or information and under (b) of this section.

(b) The supreme court has jurisdiction to hear appeals of sentences of imprisonment lawfully imposed by the superior courts on the grounds that the sentence is excessive or too lenient and, in the exercise of this jurisdiction, may modify the sentence as provided by law and by the constitution of this state. For the purpose of considering ap-

peals of sentences on these grounds, the supreme court may sit in divisions."

4. Alaska R.App.P. 23 and 24.

5. 486 P.2d at 930–931.

6. Article I, Sec. 9 of the Alaska state constitution provides in part:
"No person shall be put in jeopardy twice for the same offense."
See Browder, at 932–933, interpreting State v. Keep, 409 P.2d 321 (Alaska 1965).

from judgments of acquittal in the trial court. Since Marathon was found guilty and convicted in the trial court, a double jeopardy question is not now presented.[7]

We conclude on the basis of our analysis of the pertinent constitutional provision and the statute that the state is not precluded from appealing a final order of the superior court when that court is acting as an intermediate appellate court.

Our appellate rules in their present form fail to provide detailed procedures to implement the exercise of final appellate jurisdiction in matters of this kind. However, we find the procedures for review prescribed in Alaska Appellate Rule 23 to be appropriate under the circumstances.[8]

## II
## INTERPRETATION OF SECTION 300.20

Since we have concluded that the matter is properly before us, we now turn to the merits of the appeal. The complaint charging Marathon with noncompliance with the Alaska General Safety Code followed an explosion at Marathon's Trading Bay facilities. The explosion was brought about by the ignition of accumulated gases within a liquid trap building. A spark caused by the grounding of an arc welder to a metal column inside the liquid trap building ignited the gas.

In order to avoid such occurrences, Marathon had promulgated its own safety regulations which, among other things, required a "hot work" permit prior to performing arc welding or other similar work within 30 feet of buildings. A gas detection test of the area was required by the regulations, before such a permit could be issued, and it was only after the area was found to be safe that work was permitted. In those instances where "hot work" was to be done within a building, a Marathon employee was required to remain at the work site in order to conduct further periodic tests for accumulating gas.

On December 18, 1971, an employee of Lochner Construction Company requested a hot work permit for an area described as "behind new building on gas flare line." The area was tested by a Marathon employee for accumulated gas and after finding the area safe, a permit was issued. The work area covered by the permit did not include the area within the building where the ground cable of the arc welder

7. Woodring v. United States, 337 F.2d 235, 236–237 (9th Cir. 1964) ("It is well established that one who secures a reversal of a conviction on a mere error of law is not subjected to double jeopardy when he is retried."), cert. denied, 380 U.S. 933, 85 S.Ct. 937, 13 L.Ed.2d 820 (1965).

8. Rule 23 provides:
"An aggrieved party, including the State of Alaska, may petition this court as set forth in Rule 24 to be permitted to review any order or decision of the superior court; not otherwise appealable under Rule 5, in any action or proceeding, civil or criminal, as follows:
(a) From interlocutory orders granting, continuing, modifying, refusing, or dissolving injunctions, or refusing to dissolve or modify injunctions.
(b) From interlocutory orders appointing receivers or refusing orders to terminate receiverships or to take steps to accomplish the purposes thereof, such as directing sales or other disposals of property.
(c) From any order affecting a substantial right in an action or proceeding which either (1) in effect terminates the proceeding or action and prevents a final judgment therein; or (2) discontinues the action; or (3) grants a new trial.
(d) Where such an order or decision involves a controlling question of law as to which there is substantial ground for difference of opinion, and where an immediate and present review of such order or decision may materially advance the ultimate termination of the litigation.
(e) Where postponement of review until normal appeal may be taken from a final judgment or where it will result in injustice because of impairment of a legal right, or because of unnecessary delay, expense, hardship or other related factors.
Relief heretofore available by writs of review, certiorari, mandamus, prohibition, and other writs necessary or appropriate to the complete exercise of this court's jurisdiction, may be obtained by petition for review and the procedure for obtaining such relief shall be as prescribed in Part VI of these rules."

was eventually connected. The explosion occurred inside the building shortly after work commenced.

■ Marathon's primary contention is that the provisions of the Alaska General Safety Code, under which it was convicted, are simply inapplicable in the circumstances which led to the prosecution. We are asked to interpret Section 300.20 in a way that would limit its applicability solely to Marathon's employees. Such an interpretation would mean that an employer need make his place of employment safe only for those who come within the legal definition of his employees. According to Marathon, the safety of other persons who might be working on the premises, such as the employees of an independent contractor would not be the responsibility of the employer even though the employer controlled the premises and benefited from the work performed. Such a limited interpretation is not desirable and would substantially weaken the principal objective of the provision.

The focus of Section 300.20 is directed toward the safety of the place of employment rather than toward the legal relationship existing between the employer and those who may be performing work on the premises. The section provides in part:

> "No employer, owner or lessee of any property shall construct or cause to be constructed any place of employment that is not safe."

■ We conclude that the intent of Section 300.20 is to require employers to furnish a safe place of employment for all employees who may be on their premises.

## III

## VOID FOR VAGUENESS CHALLENGE

■ Marathon contends that Section 300.20 is unconstitutionally vague. Recently this court in Stock v. State, 526 P.2d 3 (Alaska 1974), extensively discussed the vagueness doctrine. We noted that there are three basic considerations in determining whether a statute or regulation is unconstitutionally vague. First, a regulation may be found to be void for vagueness if the regulation, by abutting upon sensitive areas of protected first amendment rights, " 'operates to inhibit the exercise of [those] freedoms.' "[9] Second, the enactment must not be so vague that it fails to provide adequate notice to the ordinary citizen of what is prohibited.[10] Third, the regulation must not give undue discretion to prosecuting authorities in determining what constitutes the crime.[11] Applying these considerations to Section 300.20, we reach the conclusion that the regulation is not void for vagueness.

Section 300.20 does not abut upon sensitive areas of protected first amendment rights. The regulation only requires the employer to provide a reasonably safe place to work. Since there is no threat to the exercise of fundamental constitutional rights, the first consideration stated in Stock is inapplicable to the case at bar.[12]

■ The regulation also satisfies the second consideration by providing adequate notice of what is prohibited. The regula-

---

9. Grayned v. City of Rockford, 408 U.S. 104, 109, 92 S.Ct. 2294, 2299, 33 L.Ed.2d 222, 228 (1972) (footnote omitted), *quoting* Cramp v. Board of Public Instruction, 368 U.S. 278, 287, 82 S.Ct. 275, 7 L.Ed.2d 285, 292 (1961).

10. *Id.* 408 U.S. at 108, 92 S.Ct. 2294, 33 L.Ed.2d at 227; Marks v. City of Anchorage, 500 P.2d 644, 646 (Alaska 1972).

11. *Marks, supra* note 10, at 646.

12. As mentioned in *Stock,* "[T]he United States Supreme Court has been reluctant to hold economic statutes *or others* not involving inhibition of first amendment rights to be void for vagueness." (emphasis added) *Stock,* 526 P.2d at 8 n. 8.

tion requires nothing more than reasonable conduct:

"No employer shall fail or neglect to:

. . . . . .

3. Do everything reasonably necessary to protect the life and safety of employees."

The requirement of this provision is clear. The employer must take reasonable steps to insure that his place of employment is safe and not merely safe for his employees but safe for anyone working on the premises. Men of common intelligence need not guess at the meaning.[13] Furthermore, statutes or regulations in which the trier of fact must on occasion determine a question of reasonableness are not so vague as to deny due process.[14]

The final consideration presented in *Stock* concerned the broad prosecutorial discretion allegedly authorized by the regulation. In the case now before us Marathon's alleged misconduct was clearly within the type of conduct proscribed by the regulation. A charge alleging that Marathon failed to check an area for inflammable gas in violation of its own procedures is encompassed by the regulation's requirment of taking reasonable measures to provide a safe place to work. Thus Marathon cannot claim that the regulation was arbitrarily and capriciously enforced. As we stated in *Stock*:

"While we may be able to conceive of instances in which the statute could be

arbitrarily and capriciously enforced, we cannot on the basis of such mere hypothesis, in the absence of any history of actual arbitrary application, invalidate the statute." [15]

Since we are not presented with a situation where the alleged misconduct falls outside the purview of the regulation, we will not invalidate the regulation on the basis of hypothetical situations which arguably are not encompassed by the regulation's proscriptions.

Applying the criteria announced in *Stock,* we hold that the regulation is not void for vagueness.

IV

SUFFICIENCY OF THE EVIDENCE

▋ The final issue presented in this appeal involves the sufficiency of the evidence to support the conviction in the district court. Although the superior court found the evidence insufficient, we approach the issue independently. We are not in agreement on this issue, but the reasoning of the majority is as follows.

In examining the evidence and the inferences [16] therefrom in the light most favorable to the state, the record discloses that the supervisor for Marathon who issued the permit saw where the welders were tying to the corner of the building and there was an opening there. The heat shield under construction was to be 15 to

---

13. Connally v. General Construction Co., 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322, 328 (1926) ("[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law.").

14. United States v. Ragen, 314 U.S. 513, 523, 62 S.Ct. 374, 378, 86 L.Ed. 383, 390 (1942) ("The mere fact that a penal statute is so framed as to require a jury upon occasion to determine a question of reasonableness is not sufficient to make it too vague to afford a practical guide to permissible conduct.").

While we have required that where possible conduct prohibited by a criminal statute must be defined by language descriptive of precise physical acts and events, Harris v. State, 457

P.2d 638 (Alaska 1969), it has also been recognized that in certain situations " . . . it would be futile for the Legislature to undertake to be specific in particularizing . . . " what acts are required or prohibited. State v. Masters, 106 W.Va. 46, 144 S.E. 718, 720 (1928). In *Masters* the court dealt with a statute requiring a motorist involved in an accident to stop and render "reasonable assistance." The requirement of reasonable assistance was held not to be so vague as to fail to give notice of the acts required. *See also* State v. Milligan, 87 Ariz. 165, 349 P.2d 180 (1960); People v. Thompson, 259 Mich. 109, 242 N.W. 857 (1932).

15. 526 P.2d at 12.

16. Kvasnikoff v. State, 521 P.2d 903, 905 (Alaska 1974).

18 feet high and had to be tied down against the wind. It was 10 to 12 feet from the corner where the hole was. Further, there was testimony that whenever welding was to take place within 35 feet of a building, the building should be checked for gas. The welders each testified that because of the nature of the arc welding, it was *necessary* to ground to the building. It was normal to ground to the columns of a building rather than the walls because the walls didn't give adequate electrical contact. They further testified that one would normally expect sparks from a ground on the column. From such testimony the majority of the court concludes that it can be clearly inferred that the supervisor who failed properly to check inside the building for gas violated safety requirements and this violation was the cause of the explosion which occurred. This conclusion is emphasized by the fact that the supervisor, himself, apparently construed his duties as requiring a proper inspection of the interior of the building. Immediately after the explosion he stated that he "screwed up" and was not paying sufficient attention when he tested the building. The judgment of conviction entered by the trial court is thus supported by sufficient evidence.[17]

Affirmed.

---

17. Justice FITZGERALD, with whom Justice CONNOR joins, finds the evidence before the district court insufficient to sustain the finding of guilt and would reverse the conviction.