OPINION OF THE COURT
Robert M. Haft, J.
This court is called upon to decide the novel question of whether a defendant may invoke the doctrine of collateral estoppel in a criminal case, even though the previously determined issue of fact which would create the estoppel was not specifically determined as to the defendant herein, but rather as to his codefendant in the prior proceeding.
On January 20, 1977, a New York County Grand Jury indicted defendant Manuel Felton and his codefendant Jesse Gwyn for criminal possession of a controlled substance in the second degree. At their joint jury trial, testimony was elicited that Gwyn approached Felton on Eighth Avenue between 112th and 113th Streets. Felton was seen putting his hand in a brown paper bag and removing a fistful of glassine envelopes. Felton put some of these envelopes into his own pocket and handed Gwyn the brown paper bag containing the balance.
The defendants then split up and were arrested separately shortly thereafter. The arresting officers found the paper bag containing 24 glassine envelopes on Gwyn but no glassine envelopes in the possession of Felton.
The prosecution’s expert witness, a chemist, testified that the 24 glassine envelopes seized from Gwyn weighed approximately one and one half ounces and contained heroin. On cross-examination, however, the chemist testified that when he performed a preliminary analysis of the substance seized, *962 he chose 8 envelopes at random and found their weight to be only one-quarter ounce. Therefore, considering the issue of the credibility of the chemist’s testimony and based on what might be a reasonable view of the evidence, the trial court charged the jury that it should consider both the crime of criminal possession of a controlled substance in the second degree (an aggregate weight of one ounce or more) and the lesser included offense of criminal possession of a controlled substance in the fifth degree (an aggregate weight of one-eighth ounce or more).
As to defendant Gwyn, the jury returned a verdict of not guilty of criminal possession of a controlled substance in the second degree but guilty of criminal possession in the fifth degree. However, as to Felton, the jury was unable to reach a verdict on either count submitted. In his case, a mistrial was thus declared and a new trial ordered pursuant to GPL 280.20. That section makes clear that when a new trial results from an order declaring a mistrial, the indictment is deemed to contain all the counts which it contained at the commencement of the previous trial. The defendant Felton now moves to estop the People from reinstating the second degree possessory count upon his retrial. He alleges that "it was necessary for the jury to make a finding of fact with respect to Jesse Gwyn * * * that the amount of the controlled substance was * * * not an ounce or more * * * [and that] the defendant Manuel Felton * * * if retried should only be charged with * * * the lesser included possessory count * * * and that no other conclusions can be drawn from the findings reached by the trial jury.”
 Collateral estoppel is a rule which denies a party a second chance to litigate an "issue of ultimate fact” once determined by a valid and final judgment between the same parties, or those in privity with them, as to matters necessarily litigated and determined in the prior proceeding. (Ashe v Swenson, 397 US 436; Schwartz v Public Administrator of County of Bronx, 24 NY2d 65.) Though seldom utilized in criminal cases, there is no doubt that the doctrine of collateral estoppel does apply to them as well as to civil actions and proceedings. (See Ashe v Swenson, supra; Matter of Levy, 37 NY2d 279; Matter of McGrath v Gold, 36 NY2d 406; Valvolizza v Krieger, 33 NY2d 351; People v Reisman, 29 NY2d 278.) In applying this doctrine, the court must decide which issues were, in fact, previously adjudicated. If the factual basis of the *963 former determination cannot be definitely ascertained, the doctrine does not apply.
In the past, many courts have refused to apply collateral estoppel unless it was mathematically certain that the same issue was determined in the previous trial. (See, e.g., People v Rogers, 102 Misc 437, affd 184 App Div 461, affd 226 NY 671.) Indeed, few courts were willing to look behind a general verdict to speculate about which issues were actually decisive. (See Hoag v New Jersey, 356 US 464.) However, in the wake of Ashe v Swenson (397 US 436, supra), a more realistic and rational approach is required. The rule of collateral estoppel will no longer be "applied with the hypertechnical and archaic approach of a 19th century pleading book” (397 US at p 444). Instead, a court should now " 'examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant [now] seeks to foreclose from consideration.’ ” (397 US at p 444; emphasis added.)
Although this court recognizes the possibility that the conviction of codefendant Gwyn of the lesser degree of possession may well have been derived from sympathy, compromise, or what the jury believed to be the "interests of justice” (since the severe penalties which exist under this State’s drug laws have been widely publicized), the record contains not an iota of support for such contention. After carefully examining the record of the prior proceeding, no rational conclusion can be drawn except that the jury in the prior action necessarily based its verdict on a factual finding that the controlled substance in question weighed less than one ounce.
A close examination of Ashe v Swenson (supra) might put this issue in sharper focus. Ashe v Swenson involved multiple victims of the same robbery. Ashe and three others were charged with the robbery of six men engaged in a poker game. At trial, there was strong evidence identifying the other three men, but the testimony identifying Ashe was so weak that he was acquitted by the jury. Indeed, it was never clearly established whether there were three or four robbers. However, Ashe was subsequently indicted for the robbery of another of the victims at that ill-fated poker game, and his plea of former jeopardy was denied. The second trial produced much stronger identification testimony and Ashe was convicted. In reversing the conviction, the Supreme Court held that collateral estop *964 pel was part of the guarantee against double jeopardy. The court examined the previous judgment of acquittal and decided: that the only issue in dispute was whether Ashe was present at the robbery; that by its acquittal, the jury necessarily decided this issue in Ashe’s favor; and that collateral estoppel precluded this issue from being relitigated in any subsequent trial. The court stated that "[o]nce a jury had determined upon conflicting testimony that there was at least a reasonable doubt that the petitioner was one of the robbers, the State could not present the same or different identification evidence in a second prosecution * * * in the hope that a different jury might find that evidence more convincing.” (397 US at p 446.)
The Supreme Court, in Ashe v Swenson (supra) applied collateral estoppel to protect a person once acquitted from having to "run the gauntlet” a second time. Collateral estoppel was used to complement the constitutional protection against double jeopardy by protecting a defendant against multiple or successive prosecutions for different offenses based on the same facts.
A strict reading of Ashe might seem to limit the application of the doctrine to criminal cases where double jeopardy considerations are present. And, in our case, since no determination was made as to Felton in the prior proceeding, no double jeopardy considerations are relevant. (See CPL 310.60, subd 2; United States v Perez, 9 Wheat [22 US] 579.) However, the defendant urges this court to expand upon the ruling in Ashe —at least to the extent that an issue of ultimate fact decided in the case of a codefendant in a prior proceeding, may be collaterally applied to foreclose consideration of the same issue upon the retrial of the other codefendant. In what appears to be a case of first impression in this jurisdiction, it remains to be decided whether Felton, as to whom no determination was made in the prior proceeding, may properly invoke collateral estoppel against the prosecution on his retrial.
In People v Lo Cicero (14 NY2d 374, 380) a case decided before Ashe v Swenson (397 US 436, supra) our Court of Appeals noted that there is "some ñexibility in regard to those who may invoke collateral estoppel * * * [while] it is essential that the party sought to be estopped be identical to, or in strict privity with, the party who previously had his day in court”. (Emphasis added.)
In People v Reisman (29 NY2d 278, supra) a search and *965 seizure in California of property about to be shipped by air to New York had been found to be unlawful by a California court in an action against the consignor, a California resident. In a separate action in New York against the consignee, the Court of Appeals held that the New York defendant could not assert collateral estoppel based on the California decision because there was both a lack of identity of the prosecuting parties and a lack of identity of issues. The Court of Appeals did not, however, rule out the possibility that had there been the requisite identity of party and issue, the New York defendant, as to whom no determination had been made in any prior proceeding, would have been entitled to assert collateral estoppel.
Other jurisdictions have not hesitated to extend Ashe v Swenson (supra), permitting the application of collateral estoppel even when no double jeopardy considerations are present. (See, e.g., People v Taylor, 12 Cal 3d 686; State v Gonzalez, 75 NJ 181; People ex rel. Farina v District Ct., 553 P2d 394 [Col].) These cases firmly establish the proposition that one can assert collateral estoppel in criminal cases as to issues of ultimate fact decided upon by a final judgment against another, provided there is an identity of issue which was necessarily decided in the prior action and that the party against whom collateral estoppel is asserted had a full and fair opportunity to contest the decision now said to be controlling.
Accordingly, while this court, strictly speaking, may be enlarging upon the holding of Ashe v Swenson, it assuredly does so in furtherance of those policy considerations upon which collateral estoppel rests, i.e., that the burden of relitigation upon the parties and upon the judicial system, with its potential for waste, harassment, uncertainty and inconsistency, outweighs the possibility of perpetuating an erroneous determination in an earlier suit. (See Mayers and Yarbrough, Bis Vexari: New Trials and Successive Prosecutions, 74 Harv L Rev 1. See, also, Note, 71 Col L Rev 321; Comment, Twice in Jeopardy, 75 Yale LJ 262.) Nor does this court go so far as to rule that a "total stranger” to a prior proceeding would be entitled to invoke the relief sought herein. But, collateral estoppel should be available to a party, even though no determination was made as to him in the prior proceeding, provided such party participated in the prior proceeding. To extend the doctrine to a "stranger”, would create an incentive for codefendants to schedule motions and trials consecutively *966 so as to capitalize on any favorable rulings rendered in the prior proceeding. This would only serve to pervert the underlying policies of collateral estoppel.
As a consequence, the People will be estopped from proceeding against defendant Felton on a charge of criminal possession of a controlled substance in the second degree, and the indictment is deemed amended to include the lesser offense of criminal possession of a controlled substance in the fifth degree.