Casimer KOTT, Petitioner,

v.

STATE of Alaska, Respondent.

No. 5570.

Supreme Court of Alaska.

Jan. 27, 1984.

Roger L. Brunner, and Kenneth P. Ringstad, Rice, Hoppner, Brown & Brunner, Fairbanks, for petitioner.

James P. Doogan, Jr., Asst. Dist. Atty., Fairbanks, Harry L. Davis, Dist. Atty., Fairbanks, and Wilson Condon, Atty. Gen., Juneau, for respondent.

Before BURKE, C.J., RABINOWITZ, MATTHEWS and COMPTON, JJ., and CARPENETI, Superior Court Judge [*].

## OPINION

BURKE, Chief Justice.

Casimer Kott petitions for hearing from a court of appeals decision reversing a judgment of acquittal entered by the district court on collateral estoppel grounds. We affirm the decision of the court of appeals.

Kott and Roland Bonneville were Fairbanks police officers. On January 10, 1979, they were attempting to videotape an individual whom they suspected of drunk driving. During the videotaping an altercation occurred which led to the filing of a criminal complaint against Kott and Bonne-

---

[*] Carpeneti, Superior Court Judge, sitting by assignment made pursuant to Article IV, section 16, of the Constitution of Alaska.

ville, charging them with assault of the suspect and erasure of the videotape to destroy evidence of the assault.

The officers were tried jointly, before a jury, in the district court. After several days of testimony, a mistrial was declared as to Kott, but trial against Bonneville continued. At the close of the case, the trial court granted Bonneville's motion for a judgment of acquittal. After Kott was assigned a new trial date, his attorney filed a motion to dismiss the complaint on collateral estoppel grounds. The motion was granted. The state thereafter petitioned the superior court for review of that decision but the petition was denied. On further petition to the court of appeals, however, the judgment of the district court was reversed, *State v. Kott,* 636 P.2d 622 (Alaska App.1981). This petition, by Kott, followed.

Kott urges in his petition: (1) that AS 22.07.020(d)(2) precludes the state from seeking review; (2) that the state and federal constitutional prohibitions against double jeopardy bar review of the trial court's judgment of acquittal; and (3) that the state is collaterally estopped from relitigating whether in fact an assault occurred. We hold that the court of appeals had jurisdiction to entertain the petition, that the state is not collaterally estopped from relitigating whether an assault occurred, and that a retrial is permissible under the double jeopardy clauses of the state and federal constitutions.

I. *State's Right to Appeal*

AS 22.07.020(d)(2) provides, in part, that "the state has no right to appeal in criminal cases except to test the sufficiency of the indictment or information or to appeal a sentence on the ground that it is too lenient." [1] Similarly, while Appellate Rule

202 states that an appeal may be taken to the court of appeals from a final judgment entered by the superior or district court, "[i]n criminal cases, the prosecution has a right to appeal only to test the sufficiency of the indictment or on the ground that the sentence is too lenient." Alaska R.App.P. 202(c). The question presented here is whether this language precludes the state from seeking appellate review of the district court's decision to grant a judgment of acquittal.

The case is made to appear more complex than it really is because of its procedural history. Apparently in the belief that it had no right to appeal the decision, because of AS 22.07.020(d)(2) and Appellate Rule 202(c), the state petitioned for review pursuant to Appellate Rule 402. The latter provides, partly: "An aggrieved party, including the state ..., may petition the appellate court ... to review any order or decision of the trial court, not appealable under [Appellate] Rule 202...." Alaska R.App.P. 402(a)(1). The court of appeals elected to treat the petition as an appeal, based upon its determination that the petition challenged a final judgment. *State v. Kott,* 636 P.2d 622, 623 (Alaska App.1981). The court concluded that the state's appeal was not barred by AS 22.07.020(d)(2) and reversed.

 We do not quarrel with the court of appeals' decision that the judgment of acquittal was a final judgment.[2] We do, however, take issue with the court's further holding that AS 22.07.020(d)(2) did not preclude an *appeal* by the state. In so holding, the court of appeals relied on its earlier decision in *State v. Michel,* 634 P.2d 383 (Alaska App.1981), where the court held that "the state may appeal ... any adverse final judgment of a trial court in a criminal action ... for any reason unless

1. AS 22.07.020(d) provides:

 An appeal to the court of appeals is a matter of right in all actions and proceedings within its jurisdiction except that (1) the right to appeal to the court of appeals is waived if an appellant chooses to appeal the final decision of the district court to the superior court; and (2) the state has no right to appeal in criminal cases except to test the sufficiency of the in-

dictment or information or to appeal a sentence on the ground. that it is too lenient.

2. The judgment below terminated the action against Kott. A more complete example of a final judgment would be hard to imagine. *See generally City & Borough of Juneau v. Thibodeau,* 595 P.2d 626, 631 n. 14 (Alaska 1979); *Jordan v. Reed,* 544 P.2d 75, 78–9 (Alaska 1975).

retrial would be barred by the double jeopardy clauses of the state or federal constitutions." 634 P.2d at 385 (footnotes omitted). The court reasoned that

the reasons for strictly construing statutes providing for appeals by the government, i.e., to prevent harassment of a defendant by multiple prosecutions draining away his financial resources and subjecting him to the emotional strain of pending proceedings, are more than adequately answered by the liberal interpretation given the double jeopardy clause of our state constitution.

*Id.* at 384–85.[3]

■■■ We cannot agree that AS 22.07.-020(d)(2) merely mimics the double jeopardy clause. On its face, the statute prohibits appeals except appeals testing the sufficiency of the indictment, information, or by extension, complaint.[4] Numerous other jurisdictions, in interpreting similar statutes, have held that the state's right to appeal is sharply circumscribed. *See State v. Lopez,* 26 Ariz.App. 559, 550 P.2d 113, 114 (1976); *State v. Ulmer,* 351 S.W.2d 7, 9–10 (Mo.1961); *State v. Garrett,* 228 Or. 1, 363 P.2d 762, 763 (1961); *White v. State,* 543 S.W.2d 366, 368–69 (Tex.Cr.App.1976).

We note further that when the legislature enacted AS 22.07.020(d)(2) in 1980, it had the federal analogue to that provision before it. Under federal law, the United States may appeal from an adverse deci-

**3.** In addition, the court believed that its decision was foreshadowed by decisions of this court, notably *State v. Shelton,* 368 P.2d 817, 820 (Alaska 1962) (where an indictment is dismissed for any reason, the question of its sufficiency may create an issue for review), *State v. Browder,* 486 P.2d 925, 931 (Alaska 1971) (nothing in the Alaska constitution or Alaska statutes requires that an erroneous non-final order, favorable to the accused, stand uncorrected), and *State v. Marathon Oil Co.,* 528 P.2d 293, 296 (Alaska 1974) (state may appeal where defendant has prevailed on the first appeal following his conviction).

**4.** Our prior cases give some guidance in determining when an appeal tests the sufficiency of an indictment or information. As a charging document, the fundamental purposes of the indictment or information "are to furnish the accused with a description of the charge against him to enable him to prepare his defense and to permit him to claim double jeopardy in the future should he again be charged with the same offense." *Christie v. State,* 580 P.2d 310, 321 (Alaska 1978), *quoting Thomas v. State,* 522 P.2d 528, 530 (Alaska 1974). *See Stewart v. State,* 438 P.2d 387, 390 (Alaska 1968); *Thomas v. State,* 391 P.2d 18, 24 (Alaska 1964). Thus, two of the basic criteria for determining the sufficiency of an indictment are "whether it contains the elements of the offense to be charged so as to sufficiently apprise the accused of what he must be prepared to meet at the trial," and "whether the offense charged is identified with sufficient particularity so that after judgment the accused may be able to plead the judgment in bar of further prosecution for the same offense." *Price v. State,* 437 P.2d 330, 331–32 (Alaska 1968) (footnotes omitted). *Accord, Davenport v. State,* 543 P.2d 1204, 1206 n. 1 (Alaska 1975); *Christian v. State,* 513 P.2d 664, 667 (Alaska 1973); *Roberts v. State,* 458 P.2d 340, 347–48, 348 n. 21 (Alaska 1969); *Adkins v. State,* 389 P.2d 915, 916 (Alaska 1964). An indictment is insufficient if it fails either to inform adequately the defendant of the charges against him or to identify the offense with sufficient particularity so that the resulting judgment may be pleaded as a bar to subsequent prosecutions for the same crime.

We have recognized that the indictment or information has, in addition to its functions as a charging instrument, another purpose: "to require a defendant to stand trial for [the] offense with which he is charged." *State v. Shelton,* 368 P.2d 817, 820 (Alaska 1962); *see State v. Pete,* 420 P.2d 338, 341 (Alaska 1966); *State v. Smith,* 417 P.2d 252, 254 (Alaska 1966). Thus, if the indictment is dismissed because the evidence upon which it rests is perjured or insufficient, *see State v. Johnson,* 525 P.2d 532 (Alaska 1974); *Taggard v. State,* 500 P.2d 238 (Alaska 1972); *State v. Parks,* 437 P.2d 642 (Alaska 1968); *State v. Shelton,* 368 P.2d 817 (Alaska 1962), or because of some defect in the procedures leading to indictment, *see Peterson v. State,* 562 P.2d 1350 (Alaska 1977); *State v. Smith,* 417 P.2d 252 (Alaska 1966); *State v. Pete,* 420 P.2d 338 (Alaska 1966), so that the defendant cannot be called to stand trial, then the indictment is insufficient, "regardless of the fact that it may meet all the formal statutory requisites and have all the appearances of validity." *Shelton,* 368 P.2d at 820. These cases suggest two additional criteria, then, by which the sufficiency of the indictment or information is to be tested: whether there was sufficient, credible evidence to support the indictment, and whether the indictment procedures themselves comported with statutory and constitutional requirements. Appellate review from a dismissal based on either of these considerations is permissible under AS 22.07.-020(d)(2) "to test the sufficiency of the indictment or information."

sion, "except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution." 18 U.S.C. § 3731 (as amended 1971). In other words, the federal statute plainly says what the court of appeals interpreted the Alaska statute to mean. But if our legislature intended that the right of appeal be limited by double jeopardy considerations alone, why then did it not simply say so? The adoption of a more restrictive jurisdictional statute, in the face of a federal statute to the contrary, persuades us that the legislature did indeed intend to limit substantively the state's right to appeal.

Finally, the construction urged by the state would mean that the legislature enacted an entirely superfluous statute. The state constitution contains a provision prohibiting the state from twice subjecting a defendant to jeopardy. Alaska Const., art. I, § 9. To read AS 22.07.020(d)(2) as no more than a restatement of this constitutional prohibition renders the statute thoroughly superfluous.

For these reasons, we disagree with the court of appeals' interpretation of AS 22.-07.020(d)(2), and its conclusion that the state was entitled to appeal the district court's judgment of acquittal. To the extent that it is contrary to our holding today, the court of appeals' decision in *State v. Michel*, 634 P.2d 383 (Alaska App.1981) is overruled.

The question that remains unanswered is whether the state was entitled to obtain appellate review by other means, namely, by petition for review pursuant to Appel-

late Rule 402. The court of appeals declined to address this issue, stating: "It is ... not necessary for us to consider defendant's argument that this court lacks jurisdiction to hear this matter as a petition for review ... [given the court's determination that it could treat the petition as an appeal]." *State v. Kott*, 636 P.2d at 623 n. 1. Because of our decision that the state could not obtain review by means of a direct appeal, this question must now be answered.

■ In *State v. Browder*, 486 P.2d 925 (Alaska 1971), we held that "the limitation placed upon the state's right to appeal in a criminal case ... was intended to apply only to instances where our jurisdiction is sought to be invoked by appeal." 486 P.2d at 930. Although *Browder* involved a nonfinal order, and is therefore distinguishable, it reflects our belief that an erroneous decision should not go uncorrected, simply because it is favorable to the accused.[5] Discretionary review under Appellate Rule 402 is available from "any order or decision of the trial court, not appealable under Rule 202, and not subject to a petition for hearing under Rule 302, in any action or proceeding, civil or criminal." Alaska R.App.P. 402(a)(1). As noted in *Browder*, if an appellate court does not have the opportunity to review lower court decisions, the lower court becomes the court of final jurisdiction. 486 P.2d at 930–31.

■ We are aware that some jurisdictions, in addressing this question, have held that the state may not seek relief by peti-

---

5. Our holding in *Browder*, flowed from two considerations. First, in contrast to appeals, given as a matter of right, the other forms of review authorized by AS 22.05.010 have no limitation placed on them. Second, we noted that article IV, section 2 of the Alaska Constitution provides in part that the "supreme court shall be the highest court of the State, with final appellate jurisdiction."

*Browder* implicitly overruled *State v. Keep*, 397 P.2d 973, *aff'd on rehearing*, 409 P.2d 321 (Alaska 1965). In *Keep*, we rejected the state's argument that it had the right to petition for review in an instance where appeal was barred. We noted:

> The legislature did not intend that the state should have the right to appeal a criminal case and said so in unambiguous language. If the legislature had intended that the state have some other analogous or related right or remedy with respect to criminal cases [i.e., review by petition] we assume that it would have said so in the same statute in which it prohibited the state from appealing criminal cases.

397 P.2d at 975 (footnote omitted). While the cases are distinguishable, *see State v. Browder*, 486 P.2d at 933, the substance of the *Keep* opinion did not survive *Browder*.

tion in lieu of appeal.[6] Others, however, have held that statutes similar to AS 22.07.-020(d)(2) relate exclusively to direct appeals as a matter of right and have no effect on discretionary forms of review, such as constitutional or common-law certiorari.[7] After reviewing this issue, we are convinced that nothing in AS 22.07.020(d)(2) requires that an erroneous ruling favorable to the accused go uncorrected, even if the ruling is in the form of a final order. We thus extend our holding in *Browder* to encompass all non-appealable orders, final or non-final, where appellate review is not barred by the state and federal double jeopardy guarantees. Discretionary review is available to the state under Appellate Rule 402 in such cases, despite the state's inability to bring an appeal as a matter of right. Accordingly, we hold that the court of appeals had jurisdiction to hear the matter.[8]

## II. *Collateral Estoppel*

The trial court determined that common law principles of collateral estoppel barred the state from relitigating whether in fact an assault occurred. The facts giving rise to that court's application of collateral estoppel are set forth in the opinion below and need not be restated here. Suffice it to say that the judge acquitted Bonneville, the principal in the alleged assault, and Kott attempted to use this acquittal to bar his subsequent prosecution.[9] *State v. Kott,* 636 P.2d 622, 624 (Alaska App.1981).

The narrow issue facing this court is whether, in a criminal case, a defendant may invoke a judgment of acquittal granted to a co-defendant in a prior case as a bar to his prosecution under the collateral estoppel doctrine. The traditional requirements of collateral estoppel are threefold: (1) the issue sought to be relitigated must be precisely the same as the issue in the previous litigation; (2) the judgment in the prior litigation must have decided the issue; and (3) there must be "mutuality" of parties, i.e., collateral estoppel could be invoked "only by those who were parties or privies to the action in which the judgment was rendered." *Pennington v. Snow,* 471

6. See *State v. Paul,* 8 N.M. 746, 461 P.2d 228, 229 (N.M.1969) (the state should not be permitted to accomplish by certiorari what it cannot do by appeal); *White v. State,* 543 S.W.2d 366, 368–69 (Tex.Cr.App.1976) (to say that review by certiorari does not constitute an appeal is to make a distinction without substance).

7. See *State v. Lopez,* 26 Ariz.App. 559, 550 P.2d 113, 115 (1976) (may review by way of order where appeal precluded by statute); *State v. Williams,* 227 So.2d 253, 257 (Fla.App.1969) (statute barring appeals has no effect on common law or constitutional certiorari).

8. We are aware that the criteria expressed in Rule 402(b) for the granting of review are directed toward the propriety of allowing interlocutory review in a given case. Rule 402(b) states that review "will be granted only where the sound policy behind the rule requiring appeals to be taken from final judgments is outweighed." Such a balancing process is not appropriate in all cases where review is made available under Rule 402(a)(1). It is apparent that other considerations must be applied in an appellate court's consideration of whether to grant review from final orders in criminal cases.

In view of the fact that today's decision renders incomplete the criteria for reviewability set forth in Rule 402(b) we will submit the subject of modification of Appellate Rule 402 to our Standing Advisory Committee on Criminal Rules.

9. There is no question that Kott can be convicted even though Bonneville, the principal in the alleged assault, was acquitted. Former AS 12.-15.010 provided:

The distinction between an accessory before the fact and a principal, and between principals in the first and second degree is abrogated; and all persons concerned in the commission of a crime, whether they directly commit the act constituting the crime or, though not present, aid and abet in its commission, shall be prosecuted, tried, and punished as principals.

AS 11.16.120(a)(2)(A), which became effective January 1, 1980, provides that in a criminal prosecution in which legal accountability is based on the conduct of another person it is *not* a defense that "the other person has not been prosecuted for or convicted of an offense based upon the conduct in question or has been convicted of a different offense or degree of offense." In its Commentary on the Alaska Revised Criminal Code, the Senate Judiciary Committee stated that the provision "eliminates the accessory's common law defense that the principal has not been convicted." 1978 Senate Journal Supplement No. 47 at 3.

P.2d 370, 374–75 (Alaska 1970); *see generally* 9 A.L.R.3d 203 (1966). In *Pennington*, we followed *Bernhard v. Bank of America*, 19 Cal.2d 807, 122 P.2d 892 (1942) and held that "mutuality of estoppel will not as a rule be necessary for the invocation of res judicata or collateral estoppel against a party." 471 P.2d at 377. Kott, who was neither a party nor privy to the action against Bonneville, asks that we extend *Pennington* and abandon the mutuality rule in the criminal context.

The defendant relies primarily on *People v. Taylor*, 12 Cal.3d 686, 117 Cal.Rptr. 70, 527 P.2d 622 (1974) and *People v. Jackson*, 44 Cal.App.3d 494, 118 Cal.Rptr. 702 (1975). In *Taylor*, the California Supreme Court concluded that the lack of identity of the parties did not preclude application of the doctrine of collateral estoppel "where an accused's guilt must be predicated on his vicarious liability for the acts of a previously acquitted confederate." 527 P.2d at 630–31. The *Taylor* court found the application of collateral estoppel to be mandated by three important policy considerations:

> (1) to promote judicial economy by minimizing repetitive litigation; (2) to prevent inconsistent judgments which undermine the integrity of the judicial system; and (3) to provide repose by preventing a person from being harassed by vexatious litigation.

527 P.2d at 628.

In *Jackson*, the California Court of Appeal extended the use of nonmutual collateral estoppel to criminal cases involving "interdependent or joint responsibility." 118 Cal.Rptr. at 706–07. Defendant Jackson and two others had been charged with conspiracy. Following the acquittal of the others, the court held that the state was barred by collateral estoppel from prosecuting Jackson:

> In *Taylor* the defendant could not have committed the alleged crime *unless* the previously acquitted perpetrator had committed said crime. Similarly, *unless* [Jackson's alleged co-conspirators] engaged in a conspiracy with Jackson (which it has been determined they did

not do) the latter cannot, by definition, have committed the criminal act charged. As in *Taylor*, it is impossible for Jackson to have committed the crime charged alone.

118 Cal.Rptr. at 707 (emphasis in original).

In contrast to these cases, the United States Supreme Court recently upheld the requirement of mutuality in the criminal area. *See Standefer v. United States*, 447 U.S. 10, 100 S.Ct. 1999, 64 L.Ed.2d 689 (1980). Criminal cases, said the Court, present considerations different from those in *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), or *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). First, the government is often without the kind of "full and fair opportunity to litigate" that is the hallmark of estoppel:

> [T]he prosecution's discovery rights in criminal cases are limited, both by rules of court and constitutional privileges; it is prohibited from being granted a directed verdict or from obtaining a judgment notwithstanding the verdict no matter how clear the evidence in support of guilt, cf. Fed.Rule Civ.Proc. 50; it cannot secure a new trial on the ground that an acquittal was plainly contrary to the weight of the evidence, cf. Fed.Rule Civ. Proc. 59; and it cannot secure appellate review where a defendant has been acquitted. See *United States v. Ball*, 163 U.S. 662, 671 [16 S.Ct. 1192, 1195] 41 L.Ed. 300 (1896).

*Standefer*, 447 U.S. at 22, 100 S.Ct. at 2007, 64 L.Ed.2d at 699. Secondly, the application of nonmutual estoppel in criminal cases is made problematical by the existence of rules of evidence and exclusion unique to the criminal law. Finally, criminal prosecutions involve considerations wholly absent in civil litigation: the important public interest in effective law enforcement.

> [T]he purpose of a criminal court is not to provide a forum for the ascertainment of private rights. Rather it is to vindi-

cate the public interest in the enforcement of the criminal law while at the same time safeguarding the rights of the individual defendant. The public interest in the accuracy and justice of criminal results is greater than the concern for judicial economy professed in civil cases and we are thus inclined to reject, at least as a general matter, a rule that would spread the effect of an erroneous acquittal to all those who participated in a particular criminal transaction. To plead crowded dockets as an excuse for not trying criminal defendants is in our view neither in the best interests of the courts, nor the public.

447 U.S. at 25, 100 S.Ct. at 2008, 64 L.Ed.2d at 701 (quoting *United States v. Standefer,* 610 F.2d 1076, 1093 (3d Cir.1979)).

■ With the court of appeals, we are persuaded by the reasoning in *Standefer.* As the court of appeals noted, "there is no question of harassment by successive prosecutions of one who is tried but once, though a co-defendant might earlier have been tried." 636 P.2d at 626; *compare People v. Taylor,* 12 Cal.3d 686, 527 P.2d 622, 527 P.2d 622, 628 (Cal.1974). Nor are we swayed by the fact that Kott might be convicted in the face of Bonneville's earlier acquittal; that possibility merely recognizes "the simple, if discomforting, reality that 'different juries may reach different results under any criminal statute. That is one of the consequences we accept under our jury system.' " *Standefer,* 447 U.S. at 25, 100 S.Ct. at 2008, 64 L.Ed.2d at 701 (quoting *Roth v. United States,* 354 U.S. 476, 492 n. 30, 77 S.Ct. 1304, 1313 n. 30, 1 L.Ed.2d 1498, 1511 n. 30 (1957)). Finally, like the court of appeals we believe that the

state's need to have a full and fair adversary proceeding outweighs the interest in promoting judicial economy by minimizing repetitive litigation. Accordingly, we affirm the court of appeals and hold that collateral estoppel did not preclude the state from relitigating whether in fact an assault occurred.[10]

### III. *Double Jeopardy*

■ Kott argues that remanding this case for trial would contravene the state and federal prohibition against twice subjecting a criminal defendant to jeopardy. We disagree.

As the court of appeals noted in this case, "[h]ere the trial judge neither heard all of the evidence against respondent nor concluded that a reasonable jury could not find him guilty beyond a reasonable doubt based upon that evidence. Rather, he concluded that a judgment of acquittal previously entered in favor of a codefendant barred trial of [Kott] under the doctrine of collateral estoppel." *State v. Kott,* 636 P.2d 622, 623–24 (Alaska App.1981). The jury had not been empaneled and sworn, and there is no indication that the defendant had waived his right to a jury trial. At no time, therefore, was Kott subjected to the risk of conviction, and consequently jeopardy did not attach. It is immaterial that the trial judge reviewed the court file and the evidence presented against Kott in the original action against Bonneville. The fact is that at no time prior to the swearing of the jury could the defendant have been subjected to the "risk of a determination of guilt, ... and neither an appeal nor further prosecution constitutes double jeopardy." *See Serfass v. United States,* 420 U.S. 377,

---

**10.** Most jurisdictions retain the requirement of mutuality in the criminal area. *See State v. Jiminez,* 130 Ariz. 138, 634 P.2d 950 (1981); *State v. Wilson,* 236 Iowa 429, 19 N.W.2d 232 (1945); *Commonwealth v. Scala,* 8 Mass.App. 202, 392 N.E.2d 869 (1979); *Larsen v. State,* 93 Nev. 397, 566 P.2d 413 (1977); *People v. Felton,* 95 Misc.2d 960, 408 N.Y.S.2d 646 (N.Y.Sup. 1978); *Cleveland v. Ryan,* 106 Ohio App. 110, 148 N.E.2d 691 (1958). *See generally,* 9 A.L. R.3d 203 (1966).

Having determined that the state was barred by collateral estoppel from relitigating the issue of whether an assault occurred, the trial court dismissed Count II of the complaint charging Kott with unlawfully destroying evidence "concerning commission of the crime of assault and battery." There being no crime, reasoned the trial court, there could be no destruction of evidence of a crime. Inasmuch as the court erred in applying nonmutual collateral estoppel, however, it necessarily erred in dismissing the destruction of evidence count.

391–92, 95 S.Ct. 1055, 1064–65, 43 L.Ed.2d 265, 276 (1975).

The decision of the Court of Appeals is AFFIRMED.

MOORE, J., not participating.

MATTHEWS, Justice, concurring.

I agree with parts II and III of the majority opinion which concern collateral estoppel and double jeopardy, respectively. With respect to part I of the opinion, I concur in the result only.

The statute defining the jurisdiction of the court of appeals, AS 22.07.020, was passed by the Alaska State Legislature in 1980. The language in question in this case is that of subsection (d)(2):

the State has no right of appeal in criminal cases except to test the sufficiency of the indictment or information. . . .

This language was taken, without substantial change, from former AS 22.05.010 defining the jurisdiction of the Supreme Court;[1] and from AS 22.10.020(a) defining the appellate jurisdiction of the superior court.[2] The relevant language of these two statutes was first enacted by the Alaska State Legislature at the advent of statehood, ch. 50, §§ 1, 17, SLA 1959, and has continued without change. Because there is no legislative history to the contrary, and because nearly identical language was used, the legislature clearly intended that the language used in AS 22.07.020(d)(2) would mean what the language used in former AS 22.05.010 and AS 22.10.020(a) had meant. Any other conclusion would border on the preposterous. If the legislature had intended a different meaning it would not have merely copied the phraseology of the earlier statutes.

The question becomes what the former statutes meant. There are two levels of inquiry. The first pertains to the historical purpose of statutes of this type. The second pertains to what these statutes had

been construed to mean prior to enactment of AS 22.07.020(d)(2).

The general rule at common law was that the State could not appeal in a criminal case. In *United States v. Sanges*, 144 U.S. 310, 12 S.Ct. 609, 36 L.Ed. 445 (1892), the court, after making an exhaustive review of State authorities, summed up the prevailing view as follows:

But the decisions above cited conclusively show that under the common law, as generally understood and administered in the United States, and in the absence of any statute expressly giving the right to the State, a writ of error cannot be sued out in a criminal case after a final judgment in favor of the defendant, whether that judgment has been rendered upon a verdict of acquittal, or upon a determination by the court of an issue of law. In either case, the defendant, having been once put upon his trial and discharged by the court, is not again to be vexed for the same cause, unless the legislature, acting within its constitutional authority, has made express provision for a review of the judgment at the insistence of the government.

*Id.* at 318, 12 S.Ct. at 612, 36 L.Ed. at 448–449. The court made it plain that this rule was generally based on common law grounds rather than constitutional double jeopardy:

. In a few states, decisions denying a writ of error to the State after judgment for the defendant on a verdict of acquittal have proceeded upon the ground that to grant it would be to put him twice in jeopardy, in violation of a constitutional provision.

But the courts of many states, including some of the great authority, have denied, upon broader grounds, the right of the State to bring a writ of error in any criminal case whatever, even when the discharge of the defendant was upon the decision of an issue of law by the

---

**1.** Former AS 22.05.010 provided in relevant part: "the State shall have no right of appeal in criminal cases, except to test the sufficiency of the indictment or information."

**2.** AS 22.10.020(a) provides in relevant part: "[t]he State has no right to appeal in criminal cases, except to test the sufficiency of an indictment or information. . . ."

court, as on demurrer to the indictment, motion to quash, special verdict, or motion in arrest of judgment.

*Id.* at 313, 12 S.Ct. at 610, 36 L.Ed. at 447 (citations omitted).

The purpose of statutes like AS 22.05.010 was not to constrict the right of the prosecution to appeal, for that was the preexisting common law rule, but to provide an exception to the common law rule and allow the prosecution to appeal. This is discussed at length in both the majority opinion and the dissenting opinion of Mr. Justice White in *United States v. Sisson*, 399 U.S. 267, 293–307, 335–349, 90 S.Ct. 2117, 2131–2138, 2153–2160, 26 L.Ed.2d 608, 626–634, 649–657 (1970). Therefore, from an historical perspective, the purpose of the statutory language is to permit the State to appeal in the circumstances described in the statute.

In *State v. Shelton*, 368 P.2d 817 (Alaska 1962) this court gave a broad reading to the language of AS 22.05.010 permitting the State to appeal to test the sufficiency of an indictment. In *Shelton* the indictment had been dismissed on the grounds that it was based on perjured testimony. As in the present case, there was nothing wrong with the form of the indictment. The trial court simply concluded that a substantive legal doctrine required dismissal. We rejected the view that the statutory term "sufficiency" related only to the form of the indictment and held the State could raise on appeal the validity of the rationale underlying dismissal of the case. In so holding we stated that "sufficiency":

> denotes the concept of adequacy and adaptation to a desired end. An indictment has a purpose—to require a defendant to stand trial for a criminal offense with which he is charged. If it is not adequate to answer the purpose for which it is intended, then it is insufficient, regardless of the fact that it may meet all the formal statutory requisites and have all the appearances of validity. When an indictment is dismissed *for any reason*, the question of its sufficiency

may create an issue, and this court has the power of review.

*Id.* at 820 (emphasis added). This language can only be reasonably read to mean that former AS 22.05.010(a) permitted the State to appeal any dismissal of an indictment or information. Until today, so far as I am aware, this interpretation of *Shelton* has never been questioned.

The rule of interpretation which governs this case is as follows:

> Where a statute has received a contemporaneous and practical interpretation and the statute as interpreted is reenacted, the practical interpretation is accorded greater weight than it ordinarily receives, and is regarded as presumptively the correct interpretation of the law. Because court decisions are readily accessible to public view, the rule has special force when the former construction was made by the judiciary. Thus where the legislature adopts a legislative expression which has received judicial interpretation, such interpretation will be prima facie evidence of the legislative intent.

2A C. Sands, Sutherland Statutory Construction § 49.09, at 256 (4th ed. 1973). Thus, because the legislature reenacted the language formerly contained in AS 22.05.-010 permitting the State to appeal to test the sufficiency of an indictment, it logically can be presumed that the legislature intended the reenacted language to mean what this court had formerly said it meant. That meaning is, as we have seen, that the State may appeal "[w]hen an indictment is dismissed for any reason ...." *Shelton*, 368 P.2d at 820. Of course, such a grant of power is limited by constitutional double jeopardy. However, it is not necessary to express in statutory terms this limitation. To do so would be superfluous. Because this interpretation is not different from that given AS 22.07.020(d)(2) by the court of appeals in *State v. Michel*, 634 P.2d 383 (Alaska App.1981) which was in turn relied upon by that court in the present case, I would affirm the court of appeals' interpretation.

The conclusion of the majority opinion that the State may not appeal but it may take a petition for review was explicitly rejected in *State v. Keep*, 397 P.2d 973 (Alaska 1965). In *Keep*, the complaint was dismissed after trial began and the State challenged the dismissal by a petition for review. We held that because the state could not appeal from the final judgment it could not take a petition for review. Doing so would permit "the state to accomplish indirectly what it is prohibited from doing by statute." *Id.* at 975.

The logic of this holding seems correct and it is not directly attacked by today's majority opinion. Instead the majority holds that we implicitly overruled *Keep* in *State v. Browder*, 486 P.2d 925 (Alaska 1971). I think very few reasonable people reading *Browder* would conclude that *Keep* was intended to be overruled. *Keep*, as will be recalled, involved an acquittal after trial had begun. *Browder* involved a conviction at the trial level, an appeal by the defendant to the superior court acting as an intermediate appellate court, a reversal and remand by the superior court, and a petition for review by the state from the order of the superior court to this court. We held that we had jurisdiction to entertain the petition and distinguished *Keep* on the grounds that a final judgment of acquittal was involved in *Keep*, but not in *Browder*. We took pains in *Browder* to limit our holding to petitions taken from "a non-final order or decision...." *Id.* 486 P.2d at 931. We have in two separate cases cited *Keep* and *Browder* together, *State v. Gibson*, 543 P.2d 406, 408 n. 3, (Alaska 1975); *State v. Marathon Oil Co.*, 528 P.2d 293, 295 n. 6, (Alaska 1974), and, until today, we have never suggested that *Browder* is in any way inconsistent with *Keep*.

I also take issue with the majority's reasoning in two further respects. First, the majority states that when the legislature enacted AS 22.07.020(d)(2) in 1980 it had an analogous federal statute before it. This statement is wrong except in the rather meaningless sense that the legislature had the federal statute available for reference. The legislature also could have looked at a statute of any other state concerning the prosecution's right to appeal, but there is no evidence that it did, just as there is no evidence that the legislature actually considered the federal statute. What the legislature clearly did was to consider the Alaska statutes which had been interpreted by this court and from which the language of AS 22.07.020(d)(2) was copied.

Second, the majority opines that the construction of AS 22.07.020(d)(2) given by the court of appeals would render that subsection superfluous as no more than a restatement of the constitutional prohibition against double jeopardy. However, as we have established, from an historical perspective this statement is wrong. The purpose of statutes like that involved here was to allow the state to appeal. Without an express statutory grant of the right to appeal, the traditional view has been that the State may not appeal in a criminal case.[3]

In summary, the decision of the court of appeals in this case and in *Michel* is consistent with the historical purpose of the statute in question; is consistent with *Shelton* and *Keep;* and is consistent with the rule that when a legislature copies language which has been judicially interpreted, that interpretation is presumed to be what the legislature intended. By contrast, the reasoning of the majority opinion is in conflict with the historical purpose of the language in question; is inconsistent with *Shelton;* requires that the holding of *Keep* be overruled; fails to deal with the holding of *Keep* on its own merits, but takes the unjustified position that *Keep* has already been overruled; and ignores the

---

3. Further, superfluity in the sense of statutory repetition of a constitutional prohibition is surely one of the most minor of sins of a legislative draftsman. For example, the federal statute, 18 U.S.C. § 3731 (as amended 1971), cited by the majority as a model, (at ——) is guilty of superfluity. ["... no appeal shall lie when the double jeopardy clause of the United States Constitution prohibits further prosecution."]

rule of construction that reenacted language carries with it the meaning imparted by prior published judicial decisions. For these reasons I agree with the court of appeals and disagree with the majority opinion.