# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON, )
) No. 72768-1-I
Respondent, )
) DIVISION ONE
v. )
) UNPUBLISHED OPINION
JEREMIAH CHARLES CROWELL, )
)
Appellant. ) FILED: March 9, 2015
)
_____ )

APPELWICK, J. — Crowell appeals his conviction of third degree rape of a child. He argues that the trial court erred in admitting a recording of the victim's police interview, because it did not fall under the excited utterance exception to the hearsay rule. However, this error was harmless. He asserts that his trial counsel was ineffective for not objecting to testimony describing the victim's written statement about the incident. He does not establish deficiency or show a lack of a legitimate strategic reason for not objecting. His statement of additional grounds lacks merit. We affirm.

## FACTS

On the evening of November 30, 2012, fifteen year old J.R. attended a parade in Stevenson with her mother, Sara Slack, and Slack's friend, Kendra Latimer. Latimer was a close family friend, and J.R. called her "Aunt Kendra." Latimer invited J.R. to stay over that night at her home in Carson. J.R. agreed, and Slack gave her permission to stay over.

That night, Latimer's friend, Jeremiah Crowell, came over. J.R., Latimer, and Crowell watched television, talked, and ate pizza together. Latimer testified that she then worked at her in-home job into the early morning hours and got in bed around 2:30 a.m. According to Latimer, neither J.R. nor Crowell left her home at any point.

According to J.R., after Latimer fell asleep, Crowell asked J.R. if she wanted to go on a drive. J.R. agreed, and Crowell drove her to Blue Hole, a swimming hole nearby. Crowell parked and they got into the back seat of the car. Crowell removed his and J.R.'s clothes and performed various sexual acts with J.R. J.R. initially told Crowell to stop, but he did not, so she "just kept quiet."

J.R. and Crowell returned to Latimer's home. J.R. did not tell Latimer what happened because she was embarrassed. J.R. went to sleep on the couch and Crowell slept in a chair.

On Monday morning, one of J.R.'s classmates approached her at school and asked about what happened. J.R. told the classmate that she lost her virginity but did not say she was raped, because it was uncomfortable and she did not want people to know. By the end of the day, J.R. could tell that quite a few people were talking about her having "had sex with an older guy."

Later that week, Crowell complained to Latimer that J.R. was telling people that she and Crowell had sex. On December 5, Latimer texted Slack and told her that J.R. was no longer allowed to come over, because she was making false allegations about having sex with Crowell. Slack said that she would talk to J.R. about it.

When Slack confronted J.R. that evening, J.R. ran into her room and started crying. Slack's boyfriend, Chris Smiley, arrived and also tried to talk to J.R. J.R. was hysterically crying. Smiley suggested that it might be better if J.R. wrote down what happened. J.R. wrote out a statement about the incident. Smiley's understanding from the statement was that the encounter was initially consensual, but then J.R. told Crowell to stop but he did not do so.

2

After reading J.R.'s account of that night, Slack called the police. Deputy Michael Hepner responded to the call. He spoke to J.R., who was crying and upset. J.R. told him that Crowell drove her to Blue Hole, took off her clothes, put his penis in her vagina and her mouth, and had anal sex with her. Deputy Hepner was not sure J.R. understood what anal sex was. Deputy Hepner took J.R.'s statement and passed the case on to Deputy Timothy Garrity.

Deputy Garrity interviewed J.R. on December 6, 2012. The interview was recorded. J.R. told Deputy Garrity that Crowell drove her to Blue Hole, told her to get in the back seat, and started kissing her and pulling her towards him. J.R. said that she kept telling Crowell to stop, but he made her give him a "blow job" and tried "fingering" and having sex with her.

The State charged Crowell with third degree rape of a child, second degree rape, and second degree assault with sexual motivation.

At trial, the State argued that Crowell forcibly compelled J.R. to have sex with him. The State called both deputies as witnesses and played a portion of J.R.'s interview with Deputy Garrity for the jury.

The State also called Slack and Smiley, who testified about the contents of J.R.'s written statement. Slack testified that the statement said Crowell had taken J.R. to Blue Hole, told her to get in the back seat of the car, and told her to take her clothes off. Smiley testified that the statement said J.R. had a couple alcoholic beverages and went for a ride with Crowell to Blue Hole. Crowell and J.R. got in the back seat and started making out, but it got "pretty hot and heavy" and J.R. got scared and told Crowell to stop, but he did not.

3

J.R. also testified at length about the incident. She said that Crowell drove her to Blue Hole, parked, and told J.R. to get in the back seat. J.R. said she did so, because she "was scared if I didn't." J.R. testified that Crowell also got in the back seat and removed his and J.R.'s clothes. She said that Crowell put his mouth on her vagina, forced her to put her mouth on his penis, and had sexual intercourse with her. J.R. said that this occurred without her consent, but that she did not resist because she was afraid.

The State also called Jayson May, a fellow inmate of Crowell's, who testified that Crowell told May that he had consensual sex with J.R. According to May, Crowell said that J.R. was "all over him in a sexual way" and Crowell "took care of business."

Crowell maintained that he was innocent of all charges. He argued that J.R. made up the whole story, and he pointed out several inconsistencies between J.R.'s various statements about the incident. He also called three of J.R.'s classmates who testified that J.R. said she lost her virginity to Crowell and seemed "excited," "happy," and "proud" about it.

The jury found Crowell not guilty of second degree rape and second degree assault with sexual motivation. It found him guilty of third degree rape of a child. He was sentenced to 41 months in prison. He appeals.

## DISCUSSION

Crowell challenges the admission of J.R.'s recorded police interview, arguing that it did not fall under the excited utterance exception to the rule against hearsay. He further asserts that his counsel was ineffective for failing to object to Slack's and Smiley's testimony about the contents of J.R.'s written statement. He also raises several issues in his statement of additional grounds.

4

## I. Excited Utterance

Crowell argues that the trial court erred in allowing the State to play the recording of J.R.'s interview with Deputy Garrity, because it was inadmissible hearsay. He notes that J.R. gave the interview a week after the event in question and had repeated her claims numerous times in the interim. Therefore, he contends, the excited utterance exception is not applicable.

Hearsay is a statement made by an out-of-court declarant offered to prove the truth of the matter asserted. ER 801(c). Hearsay is generally inadmissible, unless there is an applicable exception. ER 802. One such exception is an excited utterance. ER 803(2). An excited utterance is a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." ER 803(2). The key determination is whether the statement was made while the declarant was still under the influence of the event such that the statement could not be the result of fabrication, intervening actions, or the exercise of choice or judgment. State v. Strauss, 119 Wn.2d 401, 416, 832 P.2d 78 (1992). We review a trial court's determination that a hearsay statement falls within the excited utterance exception for an abuse of discretion. State v. Davis, 141 Wn.2d 798, 841, 10 P.3d 977 (2000).

The State elicited testimony from Deputy Garrity that he interviewed J.R. on December 6. Deputy Garrity testified that J.R. was "[p]retty tense, upset, at times had difficulty talking about certain things." He further stated that she became "extremely emotional" during the interview. The State then offered the recording as an excited utterance. The trial court admitted the recording over Crowell's hearsay objection.

Although J.R. was "extremely emotional" when she spoke to Deputy Garrity, this is insufficient to satisfy the excited utterance exception. As the State notes, the basic premise of the rule is that the speaker has no opportunity to lie before making the utterance. See State v. Briscoeray, 95 Wn. App. 167, 172, 974 P.2d 912 (1999). When Deputy Garrity interviewed J.R., it had been nearly a week since the incident with Crowell. While the passage of time is not dispositive, there is no evidence that J.R.'s state of stress or excitement was continuous throughout that time period, as the exception requires. Compare State v. Thomas, 46 Wn. App. 280, 284-85, 730 P.2d 117 (1986) (trial court properly admitted excited utterance testimony where declarant made statements six to seven hours after the event and no intervening influences rendered statements unreliable), aff'd, 110 Wn.2d 859, 757 P.2d 512 (1988), with Brown v. Spokane County. Fire Prot. Dist. 1, 100 Wn.2d 188, 195-96, 668 P.2d 571 (1983) (statements made 30 to 40 minutes after event were not within the rule where declarant had an opportunity to calm down and reflect). In the week before the interview, J.R. told multiple people about the incident. Her account of the incident varied depending on whom she told. See id. J.R. testified that when people asked her about it at school that week, she did not tell them what really happened because she was embarrassed. J.R. was understandably upset when recounting the events to Deputy Garrity, but simply being upset is not enough to satisfy the excited utterance exception. See State v. Dixon, 37 Wn. App. 867, 873-74, 684 P.2d 725 (1984). J.R. was not still under the influence of the event such that her

statement had the reliability contemplated by the exception. The trial court abused its discretion in admitting the recording as an excited utterance.[1]

Crowell asserts that admission of this evidence denied him a fair trial. Admission of inadmissible hearsay amounts to constitutional error where it runs afoul of the Confrontation Clause. State v. Greiff, 141 Wn.2d 910, 928, 10 P.3d 390 (2000). The Confrontation Clause prohibits admission of testimonial hearsay statements when the declarant is unavailable to testify and the defendant has not had an opportunity to cross-examine the declarant. Crawford v. Washington, 541 U.S. 36, 68, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). That is not an issue here, as J.R. testified. Crowell has not demonstrated that admission of the recording rises above a mere evidentiary error to an error of constitutional magnitude. The standard for prejudice is thus whether, within reasonable probabilities, the outcome of the trial would have been materially affected had the error not occurred. State v. Tharp, 96 Wn.2d 591, 600, 637 P.2d 961 (1981).

The jury found Crowell guilty of third degree child rape. The only disputed element of that crime[2] was whether Crowell and J.R. had sexual intercourse. There was substantial admissible evidence that this occurred. J.R. testified about it at length.

---

[1] Crowell also asserts that the evidence was cumulative. Because we conclude that the evidence was inadmissible hearsay, we need not address this argument. We note, however, that the presentation of evidence relating to a material issue is not needlessly cumulative simply because it comes in through several witnesses. See, e.g., State v. Smith, 82 Wn. App. 327, 333, 917 P.2d 1108 (1996) (statements that rape victim made to friend, doctor, and police not needlessly cumulative because each witness had perspective that helped State rebut assertion that sex was consensual), overruled on other grounds by Portuondo v. Agard, 529 U.S. 61, 120 S. Ct. 1119, 146 L. Ed. 2d 47 (2000).

[2] "A person is guilty of rape of a child in the third degree when the person has sexual intercourse with another who is at least fourteen years old but less than sixteen years old and not married to the perpetrator and the perpetrator is at least forty-eight months older than the victim." RCW 9A.44.079(1).

Crowell called several witnesses who testified that J.R. told them she had sex with Crowell. And, May testified that Crowell said he had consensual sex with J.R.

Moreover, admission of the tape allowed Crowell to attack J.R.'s credibility. That credibility was central to proving the State's case.[3] The discrepancies between J.R.'s statements in the interview and her testimony at trial gave the jury reason to doubt J.R.'s account of the incident. This is evidenced by the verdict: the jury found Crowell not guilty of second degree rape, which required the State to prove that Crowell forcibly compelled J.R. to have sex with him. See RCW 9A.44.050(1)(a). There is not a reasonable probability that admission of the interview recording materially affected the outcome of the trial.

It was error to admit J.R.'s recorded interview. However, this error was not prejudicial.

## II. Ineffective Assistance of Counsel

Crowell contends that his counsel was ineffective for failing to object when the State elicited testimony from Slack and Smiley repeating the claims J.R. made to them in her written statement. He asserts that J.R.'s statement was inadmissible hearsay and that there was no tactical reason to allow two witnesses to repeat J.R.'s claims to the jury.

We review de novo a claim of ineffective assistance of counsel. State v. Sutherby, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). To prevail on an ineffective assistance claim, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness based on consideration of all the circumstances and (2) the deficient

---

[3] There was no physical evidence to support or negate J.R.'s claim. J.R. testified that she washed her clothes right after the incident. Dr. Linnea Wittack, the pediatric emergency physician who examined J.R., characterized her exam as "neutral."

performance prejudiced the trial. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Deficient performance is that which falls below an objective standard of reasonableness. In re Det. of Moore, 167 Wn.2d 113, 122, 216 P.3d 1015 (2009). Prejudice occurs if, but for the deficient performance, there is a reasonable probability that the outcome of the proceedings would have been different. State v. McFarland, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). There is a strong presumption of effective assistance. Moore, 167 Wn.2d at 122.

The reasonableness inquiry requires the defendant to show the absence of legitimate strategic or tactical reasons for the challenged conduct. McFarland, 127 Wn.2d at 336. Counsel's decisions whether and when to object fall firmly within the category of strategic or tactical decisions. State v. Madison, 53 Wn. App. 754, 763, 770 P.2d 662 (1989). "Only in egregious circumstances, on testimony central to the State's case, will the failure to object constitute incompetence of counsel justifying reversal." Id.

Given the presumption of effective assistance, we cannot say that counsel's failure to object constituted deficient performance. J.R.'s credibility was a critical facet of this case. By not objecting, counsel was able to use J.R.'s written statement to question J.R.'s credibility, which she did at length in closing argument. During closing, counsel described several inconsistencies in J.R.'s accounts of the incident, including details that J.R. testified to at trial but that did not appear in her written statement. Crowell has not met his burden to show that this was not a legitimate strategic decision. Counsel's failure to object did not constitute ineffective assistance of counsel.

9

III. Statement of Additional Grounds

Crowell raises several issues in his statement of additional grounds. He asserts that Detective Garrity failed to properly investigate the case and withheld information or evidence from the prosecutor's office. He further argues that Deputy Hepner asked purely leading questions when interviewing J.R. These allegations of error involve police behavior. They are not trial errors subject to our review. See RAP 2.2, 2.3 (this court reviews actions of the trial court).

Crowell next argues that the trial court erred in allowing the State to present evidence about his jail phone calls, because it informed the jury that he was in custody. The State presented evidence that Crowell spoke to Latimer from prison and that he told May, a fellow inmate, that he had consensual sex with J.R. Crowell asserts that these references to custody denied him a fair trial.

The Washington Constitution guarantees criminal defendants a fair and impartial trial. WASH. CONST. art. I, §§ 3, 22; State v. Mullin-Coston, 115 Wn. App. 679, 692, 64 P.3d 40 (2003), aff'd, 152 Wn.2d 107, 95 P.3d 321 (2009). This includes the right to a presumption of innocence. State v. Finch, 137 Wn.2d 792, 844, 975 P.2d 967 (1999).

In Mullin-Coston, the defendant argued that his right to a fair trial was violated when the jury was allowed to hear that he was in jail during certain conversations he had with witnesses after his arrest. 115 Wn. App. at 693. We disagreed. Id. Mullin-Coston was charged with first degree murder. Id. We thus reasoned that a reasonable juror would know that he was not likely to be released pending trial without paying a substantial amount of bail, regardless of whether he was later found innocent. Id.

10

The present case is analogous. Crowell was charged with second degree rape and second degree assault with sexual motivation. These are serious crimes. See RCW 9.94A.515 (second degree rape seriousness level of XI); RCW 9A.36.021(2)(b) (second degree assault with a finding of sexual motivation is class A felony). A reasonable juror would understand that Crowell was held in custody not because he is guilty, but simply because of the seriousness of the crimes with which he was charged. Moreover, there was no reference to restraints or shackles, which are "'unmistakable indications of the need to separate a defendant from the community at large.'" See Finch, 137 Wn.2d at 845 (quoting Holbrook v. Flynn, 475 U.S. 560, 568-69, 106 s. Ct. 1340, 89 L. Ed. 2d 525 (1986)); see also State v. Gonzalez, 129 Wn. App. 895, 899, 904-05, 120 P.3d 645 (2005) (right to fair trial violated when trial court announced that defendant could not post bail, would be transported in restraints, and was under guard in the courtroom). The references to custody here did not violate Crowell's right to a presumption of innocence.

Crowell also asserts that the references to custody were prejudicial. Crowell did not object to the challenged evidence below. Regardless, we find no error. In Mullin-Coston, we found that the reference to custody was more probative than prejudicial, because it gave context to one witness's testimony and showed another witness's lack of bias. 115 Wn. App. at 694-95. Here, the references to custody likewise gave context to the testimony. Deputy Garrity testified about Crowell's conversations with Latimer, and he referred to the jail phone calls to explain how he accessed that information. May explained that he came to know Crowell because they were incarcerated together. The trial court did not err in allowing references to Crowell's custody.

11

Crowell also argues that the trial court violated his right to a fair trial by preventing two defense witnesses from testifying. But, the court did not exclude Crowell's witnesses. It merely informed defense counsel that testimony would need to conclude the next day. The trial court has the duty and discretion to conduct a trial fairly, expeditiously, and impartially. State v. Johnson, 77 Wn.2d 423, 426, 462 P.2d 933 (1969). Crowell has not shown that the trial court's scheduling decision was an abuse of this discretion.

Crowell finally argues that J.R.'s testimony did not warrant a conviction for third degree rape of a child. Essentially, his argument is that the crime involves consensual sex with a minor, but J.R. testified that the sex was nonconsensual. A victim's consent is not an element of third degree child rape and is not otherwise relevant to the crime. See RCW 9A.44.079(1); State v. Heming, 121 Wn. App. 609, 611, 90 P.3d 62 (2004) ("Consent by the victim is not a defense to [third degree child rape].to"). We find no merit in this challenge.

We affirm.

_____

WE CONCUR:

_____          _____